IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ORLANDO H.C., | Civil No. 1:26-cv-03823-MWJS |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART |
| vs. | A# 203-736-731 |
| CHRISTOPHER CHESTNUT, *et al.*, | |
| Respondents. | |

**INTRODUCTION**

Petitioner James Orlando H.C.[1] is detained at the California City Correction

Center pending the resolution of his removal proceedings.  He seeks a writ of habeas

corpus under 28 U.S.C. § 2241, contending that the government's failure to provide him

with a constitutionally adequate bond hearing—that is, a hearing at which Petitioner

would be entitled to be released on bond unless the government demonstrated, by clear

and convincing evidence, that he is a flight risk or danger to the community—violates

his due process rights under the United States Constitution.  Respondents oppose the

petition and contend that Petitioner has twice received constitutionally adequate bond

---

[1]     For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

hearings, and that in any event, the petition is not properly before the court because Petitioner has not exhausted his administrative remedies.

For the reasons that follow, the court concludes that Petitioner possesses a constitutionally protected liberty interest that entitles him to constitutionally adequate process, and that the prudential exhaustion requirement does not bar consideration of that constitutional claim.  The court therefore GRANTS the petition.

## BACKGROUND

Petitioner is a 49-year-old native of Colombia who entered the United States on January 27, 2019, on a B-2 visitor visa and was admitted through July 26, 2019.  Dkt. No. 1, at pg. 29; Dkt. No. 12-1, at pg. 3.  Before his authorized stay expired, on July 19, 2019, Petitioner filed an application for asylum and withholding of removal.  Dkt. No. 1, at pgs. 61-74.  That application remains pending.  Dkt. No. 12-1, at pg. 3.  Petitioner was also granted employment authorization on February 29, 2024, which remains valid through February 27, 2029.  *Id.*  He did not depart upon the expiration of his authorized period of admission and remained in the United States while his asylum application was pending.

For over six-and-a-half years, the government did not seek to detain Petitioner. During that time, Petitioner obtained a Florida Class A commercial driver's license and used his work authorization to secure employment as a professional truck driver.  And he used his paychecks—for which he duly filed federal income tax returns between

2020 and 2024—to provide for his family, which includes his wife, two minor children, and a 20 year-old daughter who suffers from cerebral palsy, bilateral hallux valgus, and equinus contractures and who "requires total assistance with all activities of daily living . . . [and] ongoing specialized medical supervision."  Dkt. No. 10, at pgs. 6-7.  What Petitioner did *not* do while living in the United States was engage in any sort of criminal activity;  indeed, he has no criminal record of any kind.  Dkt. No. 1, at pg. 38; Dkt No. 12-1, at pg. 3.

But on January 28, 2026, the vehicle in which Petitioner was traveling was stopped by the Florida Highway Patrol.  And when, in connection with that stop, immigration authorities became aware that Petitioner did not hold valid immigration status, he was taken into the custody of Immigration and Customs Enforcement (ICE).  He has remained in immigration detention ever since.  Dkt. No. 12-1, at pg. 2.

During the time that Petitioner has been in the custody of immigration officials, two bond hearings have been held for him.  At the first, held on April 6, 2026, an immigration judge ("IJ") denied bond, finding Petitioner to be "a flight risk such that no amount of bond or conditions would secure his future court appearances."  Dkt. No. 1, at pg. 91.  As evidence, the IJ pointed to Petitioner's "[in]significant" length of residency in the United States; his failure to submit "documents showing a stable residential history and employment history" or "payment of income taxes"; and the lack of evidence "showing that he has any immediate family members with status in the U.S."

3

*Id.*  Although the IJ also noted Petitioner's pending asylum claim, his daughter's "significant medical needs," and his "ties to the community," she concluded that "the adverse factors militate against the Respondent's release."  *Id.*  And with the "Burden on Respondent," the IJ accordingly denied bond.  *Id.*

Both parties reserved appeal, but it does not appear from the record that Petitioner appealed the ruling to the Board of Immigration Appeals (BIA).  *Id.* at pg. 92.  Instead, he requested a second custody redetermination, supported by "186 pages of documentary evidence" addressing the gaps in the record noted by the IJ in the April 6 ruling.  Dkt. No. 10, at pg. 8.  This evidence included "identity documents confirming lawful admission; a U.S. citizen sponsor affidavit; five years of joint tax returns [between Petitioner and his wife], the marriage certificate, and birth certificates; [Petitioner's eldest daughter's] medical records; two FDLE criminal-history checks confirming no record; character affidavits and employment letters; the complete [asylum application] listing the derivative applicants; and the U.S. Department of State Level 3 travel advisory for Colombia."  *Id.*

On May 1, 2026, the IJ denied the request for a second bond hearing.  Dkt. No. 1, Exh. 3.  She described Petitioner's request for a custody redetermination following the April 6 bond denial as "based on materially changed circumstances," and specifically the alleged "ineffective assistance of counsel because [Petitioner's] prior counsel did not submit supporting documents at his bond hearing."  Dkt. No. 12-4, at pg. 1.  But the IJ

4

rejected this argument, finding that Petitioner had "not sufficiently shown how the documents he submitted in this bond hearing were not previously available for his bond hearing on April 6, 2026," and further holding that Petitioner had "not met the requirements . . . under *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988)," the BIA decision explaining the steps a noncitizen must take in order to challenge a result in their immigration proceedings based on ineffective assistance of counsel. *Id.*  Both parties again reserved appeal, with a deadline of June 1, 2026. *Id.*  Petitioner timely appealed that order on May 13, 2026, Dkt. No. 1, at pg. 94, but the BIA rejected the appeal five days later for want of a proper signature.  Dkt. No. 12-5.  It appears that Petitioner did not correct the filing defect before the appeal period expired. *See* Dkt. No. 12, at pg. 2.

Petitioner has now been in continuous custody since approximately January 29, 2026.  He filed a pro se petition for writ of habeas corpus and motion to appoint counsel on May 18, 2026.  Dkt. Nos. 1, 2.  After reviewing the petition, the court granted the motion to appoint counsel.  Dkt. No. 6.  Appointed counsel noticed an appearance in this case and filed a Motion for Temporary Restraining Order, Dkt. No. 9, and First Amended Petition for Writ of Habeas Corpus, Dkt. No. 10, on June 4, 2026.  Respondents opposed the Petition, Dkt. No. 12, and Petitioner replied, Dkt. No. 13.  Neither party has requested oral argument.

**DISCUSSION**

Petitioner's central claim is that his "continued detention without a constitutionally adequate bond hearing violates the Immigration and Nationality Act and the Due Process Clause." Dkt. No. 10, at pg. 11. He argues that under 8 U.S.C. § 1226(a), a noncitizen detained pending removal proceedings must be afforded a bond hearing that provides an "individualized determination of dangerousness and flight risk," and that "due process requires that the Government bear the burden of justifying continued detention by clear and convincing evidence." *Id.* at pg. 10. In opposition, Respondents contend that Petitioner was afforded all the process he was due: in their view, he "properly bore the burden of establishing that he was not a danger or a flight risk" at his first bond hearing, and failed to "satisfy the procedural requirement[s]" needed to receive a custody redetermination on the merits at his second one. Dkt. No. 12, at pgs. 3-4. And they argue that because Petitioner "has not appealed either decision to the BIA," his petition should be dismissed for failing to exhaust administrative remedies. *Id.* at pgs. 6-7.

Because exhaustion is generally a threshold issue, *see, e.g., Yu v. Noem*, No. 1:25-cv-2040, 2026 WL 1042213, at *2 (E.D. Cal. Apr. 17, 2026), the court addresses it first before turning to then the merits.

### A.      The Prudential Exhaustion Requirement

Before a district court reaches the merits of a habeas petition challenging

immigration detention, it ordinarily considers whether the petitioner has exhausted

available administrative remedies.  *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir.

2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

Exhaustion of administrative remedies may be required when "(1) agency expertise

makes agency consideration necessary to generate a proper record and reach a proper

decision; (2) relaxation of the requirement would encourage the deliberate bypass of the

administrative scheme; and (3) administrative review is likely to allow the agency to

correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*,

488 F.3d 812, 815 (9th Cir. 2007) (cleaned up).  But as both parties acknowledge, the

exhaustion requirement in this context is prudential rather than jurisdictional.  *See* Dkt.

No. 10, at pgs. 5-6; Dkt. No. 12, at pg. 6.  Accordingly, the court may use its discretion to

excuse exhaustion in situations where  "administrative remedies are inadequate or not

efficacious, pursuit of administrative remedies would be a futile gesture, irreparable

injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*,

370 F.3d 994, 1000 (9th Cir. 2004) (cleaned up).

Respondents argue that the petition should be dismissed based on Petitioner's

failure to validly appeal either bond determination to the BIA.  To be sure, there are

circumstances in which it is appropriate to require a noncitizen seeking to challenge an

IJ's decision to present that challenge to the BIA before raising the issue in a habeas petition. *See generally Puga*, 488 F.3d at 815-16. And Respondents may be correct that the "material change in circumstance issue" arising out of the alleged ineffective assistance of counsel and the "sufficiency of [the evidence]" issue pertaining to the evidentiary record before the IJ are "issues that . . . would rightly be appealed to the BIA" before being raised in a habeas petition. Dkt. No. 12, at pgs. 4-5. But the central claim brought by Petitioner is that the bond hearings he received misallocated the burden of proof and were therefore constitutionally inadequate. *See, e.g.,* Dkt. No. 10, at pgs. 10-11. That sort of constitutional challenge is "beyond the competence of the BIA to decide," *Zamorano v. Garland*, 2 F.4th 1213, 1224 (9th Cir. 2021) (cleaned up), and so the prudential exhaustion requirement does not bar review. *See Hernandez v. Sessions*, 872 F.3d 976, 988-89 (9th Cir. 2017). The court accordingly excuses exhaustion and proceeds to the merits of Petitioner's due process claim.

### B.      Petitioner's Protected Liberty Interest

The Due Process Clause applies to all "persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690. The threshold question is whether Petitioner held a liberty interest in his continued

8

freedom such that the Government was required to afford process before depriving him of it.

Judges in this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process. For example, in *Gagik T. v. Chestnut*, this court considered the petition of a noncitizen who had applied for asylum shortly before the expiration of his B-2 visitor visa and remained in the country for over five years as his asylum application was processed. No. 1:26-cv-04337, 2026 WL 1837413 (E.D. Cal. June 25, 2026). Despite that petitioner's lack of a criminal history—and even more importantly, despite his pending asylum application and still-valid employment authorization—he was arrested by ICE and detained without a prior hearing. Rejecting the government's contention that he held no liberty interest and was entitled to no more process than the statutory requirements of § 1226(a) provided, the court explained that "the Government's course of conduct over six years"—which included its conclusion "that there was no need to detain Petitioner after his B-2 visitor visa had expired," and its choice to "instead sanction[] his continued presence in the United States by granting . . . his employment authorization"—that gave rise "to the interest the Due Process Clause protects." *Id.* at *3. Courts in this district have adopted similar reasoning on

9

facts like those presented here.  *See Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026); *Kalkan v. Chestnut*, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026); *Villanueva-Montanez v. Lyons*, No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930 (E.D. Cal. Mar. 23, 2026); *E.E.O.H. v. Noem*, No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4–5 (E.D. Cal. Mar. 26, 2026).

The court similarly finds that reasoning applicable and persuasive here. Petitioner was lawfully admitted in 2019.  He filed a timely application for asylum that USCIS has accepted and that remains pending.  Although his initial permission to enter the United States expired, the government chose to grant him employment authorization, which remains valid through 2029.  As in *Gagik T.*, the government's affirmative choice, with meaningful knowledge of Petitioner's immigration status and circumstances, to forego the detention of Petitioner and to instead "sanction[] his continued presence in the United States" by granting his employment authorization, "the government vested in Petitioner a liberty interest in his continued freedom."  2026 WL 1837413, at *3; *see also Kharitonova*, 2026 WL 531441, at *2; *E.E.O.H.*, 2026 WL 850363, at *4–5.

Respondents argue forcefully that Petitioner's "first bond hearing properly held Petitioner to his burden" and that his "second bond hearing properly followed the procedure set out in regulations."  Dkt. No. 12, at pgs. 3-4.  In support of their position, they cite *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), in which the Ninth

Circuit held that the bond hearing procedures of § 1226(a)—which require the noncitizen to bear the burden of proof by a preponderance of the evidence—facially satisfy due process. *Rodriguez Diaz*, 53 F.4th at 1213. But *Rodriguez Diaz* addressed the adequacy of the burden allocation at a bond hearing for a person *already in custody*; it did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process. *See id.* at 1196-97. So while it may be correct for the government to say that the two bond hearings satisfied the requirements of the statute and its governing regulations, it does not address the situation present here in which a petitioner possesses a vested liberty interest giving rise to due process protections over and above what the statute requires. Here, Petitioner acquired such a liberty interest by virtue of the government's course of conduct towards him over a period of six years. In this context, due process requires the government to prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community in order to justify his continued detention. *See, e.g.,* *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1105 (E.D. Cal. 2026). That is the relief that the Constitution requires and that Petitioner is due, and it is therefore the relief that this court will order.

## CONCLUSION

IT IS HEREBY ORDERED that the First Amended Petition for Writ of Habeas Corpus, Dkt. No. 10, is GRANTED as to Count One. Because it is unnecessary to

11

resolve the other claims in the petition, the court declines to do so.  And given the

foregoing, Petitioner's motion for a temporary restraining order, Dkt. No. 9, is DENIED

AS MOOT.

Respondents are therefore ENJOINED AND RESTRAINED from continuing to

detain petitioner unless they demonstrate, within seven days of the date of this Order,

by clear and convincing evidence at a bond hearing before a neutral decisionmaker, that

Petitioner is a flight risk or danger to the community such that his physical custody is

legally justified. Respondents shall file a status report within ten days of the date of this

Order, confirming whether a bond hearing has been held and, if so, the outcome of that

hearing. The petition is GRANTED to this extent. In all other respects, the petition is

DENIED without prejudice to a future petition.

The Clerk of Court is DIRECTED to close this case and enter judgment for

Petitioner.

IT IS SO ORDERED.

DATED:       July 3, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____

Micah W.J. Smith
United States District Judge

---

Civil No. 1:26-03823-MWJS; *James Orlando H.C. v. Chestnut*, et al.; ORDER GRANTING
PETITION FOR WRIT OF HABEAS CORPUS IN PART